IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF NORTH CAROLINA EASTERN DIVISION

FILED

MAR 3 0 2026

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ 𝓐𝓐 _____ DEP CLK



4:26-CV-45-B

KECIA ADAMS COUNCIL,

Plaintiff,

v.

PITT COUNTY, NORTH CAROLINA; PITT COUNTY DEPARTMENT OF
SOCIAL SERVICES; PITT COUNTY SOCIAL SERVICES BOARD;
SHARON ROCHELLE, individually and in her official capacity as
Director of Pitt County Department of Social Services; FLORIDA
HARDY, individually and in her official capacity as HR Director, Pitt
County; JANIS GALLAGHER, individually and in her official
capacity as Pitt County Manager,

Defendants.

Civil Action No.: _____ _____

**COMPLAINT FOR VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964** (Race

Discrimination, Retaliation, and Hostile Work Environment)

**JURY TRIAL DEMANDED**

## INTRODUCTION

Plaintiff Kecia Adams Council, an African American woman, brings this action against Pitt County, North Carolina, the Pitt County Department of Social Services ("PCDSS"), the Pitt County Social Services Board, and individual Defendants Sharon Rochelle, Florida Hardy, and Janis Gallagher, for unlawful race discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

Plaintiff was a high-performing Social Work Program Manager with over 22 years of combined state service who received three consecutive strong performance evaluations, two of which were completed under the direct supervision of Defendant Rochelle. The most recent evaluation, scoring 3.89 out of 5.0, was signed by Defendant Rochelle on June 18, 2024 — just 52 days before Plaintiff's termination. Plaintiff repeatedly reported racial discrimination and a hostile work environment to Defendant Rochelle. Those complaints were acknowledged but not investigated or remedied. Plaintiff was subsequently terminated on August 9, 2024. Two African American supervisors under her direct supervision, faced with the prospect of termination, resigned, and a part-time contract supervisor was dismissed. Throughout this period, white employees who engaged in documented misconduct faced no comparable discipline.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f)(3), as this action arises under Title VII of the Civil Rights Act of 1964.

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e5(f)(3), as the unlawful employment practices alleged herein occurred within the Eastern District of North Carolina and Defendants are located within this District.

## PARTIES

3.      Plaintiff Kecia Adams Council is an African American female citizen and resident of Winterville, Pitt County, North Carolina. At all relevant times she was employed by PCDSS as a Social Work Program Manager, Employee No. 8086.

4.      Defendant Pitt County, North Carolina is a governmental entity organized under the laws of the State of North Carolina. PCDSS operates as a division of Pitt County government.

5.      Defendant Pitt County Department of Social Services ("PCDSS") is a county agency operating within Pitt County, North Carolina, and was Plaintiff's employer at all relevant times.

6.       Defendant Pitt County Social Services Board is the governing body with oversight authority over PCDSS and the direct supervisory authority over Defendant Rochelle, with authority to hire and fire the DSS Director.

7.       Defendant Sharon Rochelle is the Director of PCDSS and a white female. She was the primary decision maker in Plaintiff's suspension on June 26, 2024 and termination on August 9, 2024. She is sued individually and in her official capacity.

8.       Defendant Florida Hardy is the Human Resources Director for Pitt County. She participated in the investigation and was a decision maker in the adverse employment actions taken against Plaintiff. She is sued individually and in her official capacity.

9.       Defendant Janis Gallagher is the Pitt County Manager with ultimate administrative authority over Pitt County government operations including PCDSS. She participated in the decision to terminate Plaintiff. She is sued individually and in her official capacity.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.       Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Raleigh Area Office, Charge No. 433-2024-03071, alleging race discrimination, retaliation, and hostile work environment in violation of Title VII.

11.       On December 31, 2025, the EEOC issued a Determination and Notice of Rights to Plaintiff. Plaintiff received said Notice by email on December 31, 2025.

12.       This Complaint is filed within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue. All administrative prerequisites to filing this action have been satisfied.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment History and Performance Record

13.       Plaintiff was employed by PCDSS as a Social Work Program Manager responsible for managing the Child Protective Services Intake and Assessment Unit. Plaintiff has over 22 years of combined service in the North Carolina state retirement system, including prior service at Edgecombe County Department of Social Services and 18 years at PCDSS. At the time of her termination Plaintiff was within approximately 5 years of retirement eligibility at age 60.

14.       Throughout her tenure Plaintiff received consistently strong performance evaluations under the Pitt County Partners for Effective Performance ("PEP") system, with scores of 3.76 (period ending June 30, 2022), 4.2 (period ending June 30, 2023), and 3.89 (period ending June

30, 2024). The 2022-2023 and 2023-2024 evaluations were completed and signed by Defendant Rochelle.

15. Defendant Rochelle's evaluations of Plaintiff described her as "outstanding" in compliance with state laws and policy, "an expert in CPS policy, laws and statutes," and "by far the most fluent" user of the agency's child welfare technology system. Defendant Rochelle's 2023-2024 evaluation, signed June 18, 2024, assigned Plaintiff a score of 3.89 and attributed any performance concerns to systemic factors including ongoing staff vacancies, high caseloads, and budget denials — not to Plaintiff's personal conduct.

16. Plaintiff received no prior disciplinary action for personal conduct and no corrective action plans related to conduct at any point prior to her suspension on June 26, 2024.

17. Upon Defendant Rochelle's hiring in 2022, Plaintiff discussed with Rochelle the racially discriminatory treatment she had been experiencing at PCDSS. Defendant Rochelle acknowledged the treatment and apologized for it. Despite this acknowledgment, Rochelle subsequently failed to investigate or remedy the hostile work environment and ultimately became the decision maker in Plaintiff's suspension and termination.

## B. Hostile Work Environment Based on Race

18. During her tenure Plaintiff was subjected to a sustained pattern of racial hostility that altered the conditions of her employment. This pattern included employees openly resisting supervision by an African American manager; employees undermining Plaintiff's supervisory authority and sabotaging Plaintiff's unit operations; management officials dismissing Plaintiff's repeated complaints of racial discrimination without investigation; and Plaintiff being excluded from decisions affecting her own program area. Defendant Rochelle took no meaningful corrective action in response to Plaintiff's complaints while simultaneously allowing those complaints to be used as pretext to build a case for Plaintiff's termination.

19. Plaintiff reported to Defendant Rochelle on multiple occasions that certain white supervisory employees in her unit did not want to be supervised by her because she was Black. Rochelle's responses were dismissive. No investigation into Plaintiff's racial discrimination complaints was ever conducted.

20. Employees in supervisory and management roles engaged in documented misconduct including insubordination, unauthorized sharing of confidential management information, active sabotage of Plaintiff's unit operations, recommending concealment of an uninvestigated child welfare case from state oversight, and recruiting staff away from Plaintiff's severely understaffed unit. None of these employees were subjected to discipline comparable to that imposed on Plaintiff.

21. Plaintiff was systematically excluded from decisions affecting her own program area, including personnel decisions, office space assignments, and administrative staffing changes made without Plaintiff's knowledge or input despite directly affecting her program's functioning and her supervisory span of control.

22. A management official was given authority over administrative decisions affecting Plaintiff's program without Plaintiff's knowledge or involvement. Despite Plaintiff reporting disrespectful treatment by this individual to Defendant Rochelle, no corrective action was taken. Administrative staff previously supervised within Plaintiff's program area were transferred to this individual's supervision without Plaintiff's knowledge or input.

23. Plaintiff's African American supervisor of Haitian descent was subjected to complaints from staff about speaking her native language during personal calls in her own office. Plaintiff reported potential national origin discrimination to Defendant Rochelle. No action was taken.

24. On May 12, 2024, Plaintiff experienced physical symptoms consistent with a cardiac event while at the office and sought emergency medical evaluation. These symptoms were caused by the extreme and sustained stress of the hostile work environment. Plaintiff subsequently required medical and mental health treatment for conditions caused by prolonged workplace stress.

25. On May 28, 2024, Plaintiff formally met with Defendant Rochelle and reported a hostile work environment based on race. Plaintiff reported that retaliatory complaints were being made against Plaintiff and her supervisory team as a direct result of their efforts to hold staff accountable for performance and child welfare compliance. Plaintiff expressed fear that these complaints would lead to dismissal of herself and her supervisors. Plaintiff also described being labeled as a mean, aggressive, and angry Black woman for applying standard operating procedures and policy in her decision-making. Rochelle acknowledged these concerns but took no corrective action and conducted no investigation into the racial discrimination Plaintiff reported.

26. Following the May 28, 2024 meeting, Defendant Rochelle met separately with Plaintiff's team without Plaintiff's involvement or presence. Rather than investigating the racial discrimination Plaintiff had reported, Rochelle solicited feedback about Plaintiff's management style from Plaintiff's own subordinates. Rochelle's response to Plaintiff's formal discrimination complaint was not to investigate the discrimination but to begin building a case against Plaintiff.

27. In or around October or November 2023, Defendant Rochelle called a meeting with Plaintiff's entire unit in response to complaints that had been made against Plaintiff and her supervisory team. Rochelle addressed the complaints, informing staff that providing direction and guidance is not being mean and that staff needed to follow direction. These statements by

Defendant Rochelle directly contradict the characterization of Plaintiff's conduct in her subsequent termination letter.

28. On approximately June 25, 2024, Plaintiff contacted the Employee Assistance Program after learning that a coordinated effort was underway to solicit negative statements about her from staff. Plaintiff was experiencing physical symptoms of stress. Plaintiff was suspended the following day on June 26, 2024.

## C. Failure to Promote Based on Race

29. During her tenure at PCDSS Plaintiff applied for the Deputy Director position on two separate occasions and was never granted an interview. Plaintiff also applied for a Social Work Program Administrator position that was posted in or around the time of her suspension and remained open at the time of her termination. Plaintiff was never interviewed or considered for the position. The consistent pattern of denying Plaintiff promotional consideration for positions she applied for constitutes additional evidence of race discrimination in violation of Title VII.

## D. Retaliation for Protected Activity

30. Plaintiff engaged in protected activity under Title VII by reporting racial discrimination and a hostile work environment to Defendant Rochelle on multiple occasions, by reporting discriminatory treatment to Defendant Hardy, by formally reporting a hostile work environment based on race at the May 28, 2024 meeting with Defendant Rochelle, by taking appropriate supervisory accountability action in response to a documented child welfare failure in June 2024, and by refusing to authorize concealment of an uninvestigated child welfare case from state oversight.

31. Following Plaintiff's protected activity, Defendants subjected Plaintiff to a series of adverse actions. A coordinated effort was made to solicit negative statements about Plaintiff from staff in the days before her suspension. On June 26, 2024 — just 29 days after Plaintiff's May 28 formal discrimination complaint — Plaintiff was placed on paid investigatory suspension, required to surrender all county-issued equipment, and escorted from the building by security personnel. On August 9, 2024, Plaintiff received a call under Defendant Rochelle's direction demanding she resign by a specified deadline or be terminated. Plaintiff refused to resign and asserted her legal rights. Plaintiff's employment was terminated effective August 9, 2024.

32. The 29-day period between Plaintiff's May 28, 2024 formal complaint and her June 26, 2024 suspension establishes temporal causation between Plaintiff's protected activity and the adverse actions taken against her. The coordinated effort to solicit witness statements against Plaintiff and the pretextual nature of the investigation further establish that retaliation was a motivating factor in her termination.

### E. Pretextual Investigation and Termination

33.     On June 26, 2024, Plaintiff was suspended on paid investigatory status. Defendant Hardy was copied on the suspension letter confirming her participation from the inception of the adverse action. On the same day, two African American supervisors under Plaintiff's direct supervision, faced with the prospect of termination, resigned, and a part-time contract supervisor was dismissed. No white employees were subjected to comparable adverse action.

34.     The investigation that followed was fundamentally one-sided. Plaintiff was never provided with the specific dates, times, locations, or identities of witnesses to the incidents alleged against her. Plaintiff was therefore denied a meaningful opportunity to respond to the specific allegations. The pre-dismissal conference was held on August 7, 2024 without witnesses or legal representation permitted. The termination letter was issued two days later — confirming the decision was predetermined before the conference occurred.

35.     The termination letter cited unacceptable personal conduct and unsatisfactory performance. Both stated bases are pretextual. The performance basis is directly contradicted by Plaintiff's 3.89 PEP evaluation signed by Defendant Rochelle 52 days earlier. The conduct basis relies upon a one-sided investigation and anonymous complaints without specific identifying details.

36.     Following her termination, Defendants offered Plaintiff alternative positions at salary reductions of approximately $30,000 and $20,000 respectively. Plaintiff declined both offers. The second offer was made only after Defendants failed to obtain summary judgment in a related administrative proceeding, demonstrating it was a litigation tactic rather than a good faith remedy. Both offers confirm that Defendants did not genuinely believe Plaintiff posed a danger to children and families as implied by the termination letter. The language used in Plaintiff's termination letter has effectively prevented Plaintiff from working in her professional field of child welfare after more than 22 years of dedicated public service.

### F. Disparate Treatment of White Employees

37. Throughout Plaintiff's employment, white employees who engaged in documented misconduct were treated more favorably than Plaintiff. White supervisory and management employees who engaged in insubordination, unauthorized disclosure of confidential management information, active sabotage of Plaintiff's unit operations, recommendation to conceal child welfare failures from state oversight, and unauthorized recruitment of Plaintiff's staff faced little or no discipline. By contrast Plaintiff, who had received three consecutive strong performance evaluations and no prior conduct-related discipline, was suspended and terminated. No white employees faced comparable adverse action during this same period.

### G. Economic and Physical Harm

38. As a direct result of Defendants' unlawful conduct Plaintiff has suffered severe and ongoing harm. Plaintiff had over 22 years of combined state service and was within approximately 5

years of retirement eligibility at age 60, at which point she would have received retirement health insurance benefits. Since her termination Plaintiff has been forced to use a substantial portion of her retirement savings including funds from her 401(k) to sustain herself and her family. Plaintiff lost her health insurance upon termination preventing her from continuing necessary medical and mental health treatment for conditions caused by the hostile work environment. The language used in Plaintiff's termination letter has effectively prevented her from obtaining comparable employment in her professional field of child welfare.

## CAUSES OF ACTION
### COUNT I — RACE DISCRIMINATION Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)

39. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.
40. Plaintiff is an African American female and a member of a protected class under Title VII of the Civil Rights Act of 1964.
41. Plaintiff was qualified for her position as demonstrated by three consecutive strong PEP evaluations, the most recent signed by Defendant Rochelle 52 days before termination, and over 22 years of combined state service.
42. Plaintiff suffered adverse employment actions including suspension on June 26, 2024, denial of promotional opportunities, and termination on August 9, 2024.
43. Similarly situated white employees who engaged in documented misconduct were treated more favorably and were not subjected to comparable suspension, denial of promotion, or termination.
44. The stated bases for Plaintiff's termination are pretextual. Plaintiff's race was a motivating factor in Defendants' decision to suspend and terminate her and to deny her promotional opportunities. The adverse action taken against Plaintiff and African American supervisors under her charge while white employees with documented misconduct faced no comparable discipline, combined with Defendant Rochelle's failure to investigate Plaintiff's repeated racial discrimination complaints, evidences a racially discriminatory pattern of employment decisions.
45. As a direct and proximate result of Defendants' discriminatory conduct Plaintiff has suffered lost wages and benefits, lost retirement income, loss of substantial retirement savings, loss of health insurance, damage to her professional reputation, emotional distress, physical and psychological harm, and other economic and non-economic damages in amounts to be proven at trial.

### COUNT II — RETALIATION Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e-3(a)

46. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein. 47. Plaintiff engaged in protected activity under Title VII by reporting racial discrimination and a

hostile work environment to Defendants Rochelle and Hardy, by formally reporting a hostile work environment at the May 28, 2024 meeting, by taking appropriate supervisory action in response to a documented child welfare failure, and by refusing to authorize concealment of an uninvestigated child welfare case from state oversight.

48. Following Plaintiff's protected activity Defendants subjected Plaintiff to materially adverse actions including a coordinated campaign to solicit negative statements against Plaintiff, paid investigatory suspension on June 26, 2024, a forced resignation demand, and termination effective August 9, 2024.

49. A causal connection exists between Plaintiff's protected activity and the adverse actions taken against her. The 29-day period between Plaintiff's May 28, 2024 formal complaint and her June 26, 2024 suspension establishes temporal causation. The pretextual nature of the investigation and the coordinated effort to solicit witness statements further establish that retaliation was a motivating factor in her termination. 50. As a direct and proximate result of Defendants' retaliatory conduct Plaintiff has suffered lost wages and benefits, lost retirement income, loss of substantial retirement savings, loss of health insurance, damage to her professional reputation, emotional distress, physical and psychological harm, and other economic and non-economic damages in amounts to be proven at trial.

### COUNT III — HOSTILE WORK ENVIRONMENT Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)

51. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

52. Plaintiff, an African American female, was subjected to unwelcome harassment based on her race that was sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment.

53. The hostile work environment Plaintiff experienced included employees openly refusing to accept Plaintiff's supervisory authority; employees systematically undermining Plaintiff's management decisions and sharing confidential disciplinary information; employees actively sabotaging Plaintiff's unit; Plaintiff being excluded from decisions affecting her own program area; Plaintiff being labeled a mean, aggressive, and angry Black woman for applying standard operating procedures; and Plaintiff's formal racial discrimination complaints being repeatedly dismissed without investigation.

54. The hostile work environment was sufficiently severe and pervasive that Plaintiff suffered a physical health crisis requiring emergency medical evaluation on May 12, 2024, sought Employee Assistance Program support on June 25, 2024, and required ongoing medical and mental health treatment for conditions caused directly by the hostile work environment.

55. Defendant Rochelle had actual knowledge of the hostile work environment from Plaintiff's repeated reports and her May 28, 2024 formal complaint, acknowledged prior discriminatory treatment when she was hired in 2022, and failed to take adequate

corrective action. Defendant Hardy had actual knowledge of discriminatory treatment experienced by Plaintiff and likewise failed to investigate or remedy it.

56. As a direct and proximate result of the hostile work environment Plaintiff has suffered lost wages and benefits, lost retirement income, loss of substantial retirement savings, loss of health insurance, physical and psychological harm, emotional distress, damage to her professional reputation, and other economic and non-economic damages in amounts to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kecia Adams Council respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, and award the following relief:

A. A declaratory judgment that Defendants' conduct violated Title VII of the Civil Rights Act of 1964;

B. Front pay in lieu of reinstatement, representing the compensation and benefits Plaintiff would have earned from the date of judgment through her expected retirement date at age 60;

C. All back pay, lost wages, and lost benefits from the date of Plaintiff's suspension on June 26, 2024 through the date of judgment, with prejudgment interest;

D. Compensatory damages for emotional distress, pain and suffering, physical and psychological harm, loss of retirement benefits, loss of substantial retirement savings including 401(k) funds expended, loss of health insurance, and injury to Plaintiff's professional reputation in an amount to be determined at trial;

E. Punitive damages against the individual Defendants Sharon Rochelle, Florida Hardy, and Janis Gallagher for their malicious and reckless disregard of Plaintiff's federally protected rights;

F. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

G. An order requiring Defendants to implement comprehensive anti-discrimination and anti-retaliation policies and training; and

H. Such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

*Kecia Adams Council*

Kecia Adams Council
Pro Se Plaintiff
689 Alexandria Lane
Winterville, North Carolina 28590

Date: *March 30, 2026*

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated above, I filed the foregoing Complaint with the Clerk of the United States District Court for the Eastern District of North Carolina, Eastern Division, and that I will serve a copy upon Defendants through their counsel of record by United States Mail, postage prepaid, addressed as follows:

**Samantha M. Owens, Esq.**
**Patrick H. Flanagan, Esq.**
Cranfill Sumner LLP
2907 Providence Road, Suite 200
Charlotte, North Carolina 28211

**Ryan Matthew Gibson, Esq.**
Pitt County Government
1717 West 5th Street
Greenville, North Carolina 27834

Kecia Adams Council
Pro Se Plaintiff